UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-23475-ALTMAN/Reid

**ELI PORTNOY**,

    *Plaintiff*,

v.

**MEI CONDOMINIUM ASSOCIATION, INC.**, *et al.*,

    *Defendants*.

_____/

## ORDER DENYING MOTION TO DISMISS

One of the Defendants, Anna Strickstein-Zandman, has moved to dismiss the Plaintiff's Amended Complaint. *See* Motion to Dismiss [ECF No. 31]. For the reasons we outline below, the Motion to Dismiss is **DENIED**.[1]

### THE FACTS[2]

On September 11, 2023, our Plaintiff, Eli Portnoy, sued the Defendants—MEI Condominium Association, Inc. ("MEI"), and Anna Strickstein-Zandman—asserting violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. *See* Complaint [ECF No. 1] ¶ 1. Portnoy has since filed an Amended Complaint [ECF No. 28-1], which is the operative complaint here. Portnoy alleges that he is "a disabled individual" and is "therefore[ ] a member of a protected class of persons whom the Fair Housing Act . . . protects from unlawful discrimination by virtue of his disability." *Id.* ¶ 8. MEI "operates and maintains a condominium building, located at 5875 Collins Avenue, Miami Beach,

---

[1] The Motion to Dismiss is ripe for resolution. *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [ECF No. 36]. The Defendant did not file a reply.
[2] We take the following facts from the Amended Complaint and accept them as true for purposes of this Order.

Florida 33140," *id.* ¶ 4, and Anna Strickstein-Zandman was, "at all times relevant, [the] President of the Board of Directors of MEI Condominium Association, Inc.," *id.* ¶ 5.

In July of 2021, when Portnoy was a "resident at MEI," he "suffered a seizure[.]" *Id.* ¶¶ 12–13. Although his "tests over the following weeks came back negative, medical professionals determined that he had to reduce stress and stressful communications with others." *Id.* ¶ 13. On October 28, 2021, Portnoy "submitted notes from his doctor and therapist notifying MEI of his disability[.]" *Id.* ¶ 14. Because of his apparently strained and "antagonistic" relationship with Strickstein-Zandman, he also "request[ed] accommodation that someone other than [Strickstein-Zandman] interact with him about any business regarding his residency." *Ibid.* On November 2, 2021, "PORTNOY was denied access to the gym and other amenities. STRICKSTEIN advised that he was not healthy enough to use the gym and the other amenities based on the letter that he submitted from his doctors." *Id.* ¶ 15. Portnoy adds that "STRICKSTEIN is not a licensed medical professional, yet she determined that PORTNOY was not healthy enough to use the facilities." *Ibid.*

On November 3, 2021, Portnoy again submitted "medical letter[s]" from his therapist, Brad Kerschensteiner, and his doctor, Tania Velez-Calao, to MEI, "which verified the need for the requested accommodation." *Id.* ¶ 16. On November 12, 2021, "legal counsel for MEI" informed Portnoy "that MEI was denying Plaintiff's request for reasonable accommodation to communicate with someone other than STRICKSTEIN about any business regarding his residency." *Id.* ¶ 18. That same day, MEI "again denied PORTNOY the right to use the gym" and "informed [him] that his lease . . . would not be renewed when it expired on March 25, 2022." *Id.* ¶¶ 19–20. The next day, Portnoy's therapist submitted yet another letter to MEI, this time "clearing PORTNOY to use the gym" and "explain[ing] why it was necessary for [him] to use the gym." *Id.* ¶ 21. But, according to the Plaintiff, "MEI informed Mr. Kerschensteiner, LMFT [that] PORTNOY [was] not permitted to use the gym until the Association receives a medical letter from its treating physician clearing him to use

2

the gym." *Ibid.* As a result of these events (and on the understanding that his lease would not be renewed), Portnoy "was forced to move to another dwelling." *Id.* ¶ 12.

Portnoy alleges that the Defendants denied him "reasonable accommodation, which was necessary and required because of PORTNOY's disability, and which would have allowed PORTNOY the full use and enjoyment of his dwelling, and the privileges, or services and facilities available to other tenants and residents who were not disabled." *Id.* ¶ 23. He adds that the "Defendants, with knowledge of Plaintiff's protected class status, willfully discriminated against Plaintiff under the same terms and conditions regarding use of the gym, that were applicable to all persons who were qualified or eligible renters." *Id.* ¶ 24. "Further, Defendants with knowledge of Plaintiff's protected class status, willfully discriminated and retaliated against Plaintiff by denying his lease renewal[.]" *Id.* ¶ 27. He therefore asserts the following four claims: Count I ("Failure to Reasonably Accommodate in Violation of 42 U.S.C. § 3604(f)(3)"); Count II ("Imposing Discriminatory Terms and Conditions or Privileges of the Provision of Services or Facilities in Connection with a Dwelling in Violation of 42 U.S.C. § 3604(f)(2)"); Count III ("Harassment and Retaliation Under the Federal Fair Housing Act"); and Count IV ("Denial of Housing [in] Violation of the Fair Housing Act 42 U.S.C. § 3604(f)(1) and Florida Statute § 760.23(1)").[3] *Id.* at 8–12. The Defendant, Anna Strickstein-Zandman, has now filed a Motion to Dismiss, asking us to "dismiss Plaintiff's Amended Complaint against her pursuant to Fed. R. Civ. P. 12(b) and S.D. Fla. L.R. 7.1[.]" Motion to Dismiss at 1.[4]

---

[3] Portnoy asks us to exercise our "supplemental jurisdiction under 28 U.S.C. § 1367, over Plaintiff's claims under the Florida Fair Housing Act, § 760.20, *et seq.*, specifically, Section 760.23(2); 760.23(8) and (9)(b), and 760.37, Florida Statutes." Amended Complaint ¶ 1.
[4] MEI filed a separate Answer to the Plaintiff's Amended Complaint [ECF No. 30] on January 16, 2024.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

Strickstein-Zandman moves to dismiss the claims against her for two reasons: *One*, she says that she's "immune from personal liability under Fla. Stat. § 718.111(1)(D) and § 617.0834"; *two*, she contends that the "Amended Complaint fails to state a claim for relief against [her]." Motion to Dismiss at 4. We'll address—and reject—each argument in turn.

*First*, Strickstein-Zandman maintains that she's immune from liability because "it is well-settled law in Florida that officers and directors of a not-for-profit corporation (which includes condominium associations) are generally immune from personal liability or money damages under Florida's not-for-profit corporation statute." *Ibid.* (first citing FLA. STAT. § 617.0834; and then citing FLA. STAT. §

4

718.111(1)(d)). In "*Perlow v. Goldberg*," she tells us, "the Third District Court of Appeal affirmed the trial court's dismissal with prejudice of an action against condominium association directors relying on 'the longstanding proposition that condominium association directors are immune from individual liability, absent crime, fraud, self-dealing, or unjust enrichment.'" *Id.* at 4–5 (quoting *Perlow v. Goldberg*, 700 So. 2d 148, 149–50 (Fla. 3d DCA 1997)). And, she adds, "the Fourth District Court of Appeal also affirmed dismissal of a plaintiff unit owner's complaint against the individual condominium directors." *Id.* at 5 (citing *Raphael v. Silverman*, 22 So. 3d 837, 838–39 (Fla. 4th DCA 2009)). She concludes, in sum, that "the allegations in the Amended Complaint are wholly insufficient to overcome the statutory immunity afforded to the Director Defendant pursuant to Fla. Stat. §§ 617.0834 and 718.111(1)(d). As such, dismissal of all claims against Director Defendant, with prejudice, is warranted." *Id.* at 7.

But the state cases Strickstein-Zandman relies on have nothing to do with Counts I–III of the Amended Complaint, which arise from the Fair Housing Act ("FHA")—a *federal* statute. And courts in our District have repeatedly rejected the argument Strickstein-Zandman advances here—*viz.*, that an individual can deploy FLA. STAT. § 617.0834 to shield herself from liability under the FHA. In *Housing Opportunities Project for Excellence*, for example, Judge Martinez, denying a near-identical immunity argument, explained:

> Defendant board members and Pasch, the property manager for Botanica, have moved to dismiss the claims against them arguing that they cannot be held individually liable. In arguing that the individual board members cannot be held liable, Defendants cite Florida case law regarding the liability of officers and directors of not-for-profit corporations. Defendants specifically rely on section 617.0834 of the Florida Statutes which holds that officers and directors of not-for-profit corporations are generally immune from personal liability for corporate acts . . . . The Court finds these arguments to be without merit and finds that the board members and Pasch can be held liable under the Fair Housing Act and that Plaintiffs have stated a claim against these individual Defendants.
>
> It is clear that the Fair Housing Act allows for claims to be brought against individual Defendants. [*Meyer v. Holley*, 537 U.S. 280, 285 (2003)] (citing 42 U.S.C. § 3605(a), 42 U.S.C. § 3602(d)). Thus, board members can be held liable for their own unlawful

conduct under the Fair Housing Act as alleged in this action . . . . [S]ection 617.0834, a state statute, cannot be applied to bar Plaintiffs' federal cause of action.

*Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc.*, 510 F. Supp. 2d 1003, 1013–14 (S.D. Fla. 2007) (Martinez, J.). And that's just the tip of the iceberg. *See, e.g., Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 988767, at *4 (S.D. Fla. Mar. 13, 2014) (Scola, J.) ("[Section] 617.0834, a state statute, cannot bar a claim under the FHA, a federal cause of action.").

Nor (for similar reasons) do we see any reason to allow Strickstein-Zandman to skirt liability on Portnoy's federal claims (Counts I–III) by relying on FLA. STAT. § 718.111, which governs the regulation of condominium associations under Florida law.[5] Nothing in that law—or any other state law—shields an individual non-profit officer or director from liability under the FHA. *See Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014) (Scola, J.) ("Individual board members or agents such as property managers can be held liable when they have personally committed or contributed to a Fair Housing Act violation." (cleaned up)); *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("The Fair Housing Act itself focuses on prohibited acts. In relevant part the Act forbids 'any person or other entity whose business includes engaging in residential real estate-

---

[5] *See Citizens Prop. Ins. Corp. v. River Manor Condo. Ass'n, Inc.*, 125 So. 3d 846, 850 (Fla. 4th DCA 2013):

> [S]ection 718.111 is contained within Chapter 718, aptly titled the "Condominium Act," the purpose of which is to give statutory recognition to the condominium form of ownership of real property and establish procedures for the creation, sale and operation of condominiums . . . .
>
> [S]ection 718.111 is titled "The association," and each of its subsections regulate the activities of that "Corporate entity." *See* § 718.111(1), Fla. Stat. (2005). The statute, for example, establishes how the association shall be constituted, *see* § 718.111(1)(a)–(c); the powers and duties of the association, *see* § 718.111(2)–(14), including the association's rights to own and convey property, *see* § 718.111(7)(a); and the association's right to purchase land, leases, and condominium units. *See* § 718.111(8)–(9). The subject matter of this statute is clearly the regulation of condominium associations, as its title suggests.

6

related transactions to discriminate,' for example, because of 'race.' 42 U.S.C. § 3605(a). It adds that '[p]erson' includes, for example, individuals, corporations, partnerships, associations, labor unions, and other organizations. § 3602(d). It says nothing about vicarious liability. Nonetheless, it is well established that the Act provides for vicarious liability."); *cf. Haaland v. Brackeen*, 599 U.S. 255, 287 (2023) ("[W]hen Congress enacts a valid statute pursuant to its Article I powers, state law is naturally preempted to the extent of any conflict with a federal statute . . . . End of story. That a federal law modifies a state law cause of action does not limit its preemptive effect." (cleaned up)). We therefore agree with our colleagues (and with the Plaintiff) that Strickstein-Zandman cannot use either of these state statutes "to claim immunity from federal law." Response at 5.

But here's the thing: Even if an individual defendant *could* use § 617.0834 to bar a claim under the FHA, we *still* wouldn't dismiss Strickstein-Zandman from this case because "immunity under § 617.0834 is not absolute[.]" *Sabal Palm*, 2014 WL 988767, at *4. Indeed, as relevant here, "the statutory immunity afforded to officers and directors of non-profit corporations in Florida [under § 617.0834] does not apply to willful violations of rights[.]" *Jain v. Towers of Channelside Condo. Assoc.*, 2021 WL 3111541, at *2 (M.D. Fla. July 22, 2021) (Barber, J.); *see also* FLA. STAT. § 617.0834(1)(b)(3) (providing that the statute's immunity doesn't apply when an "officer's or director's breach of, or failure to perform, his or her duties" constitutes "[r]ecklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property").[6]

---

[6] The same is true of FLA. STAT. § 718.111(1)(d), which provides that "[a]n officer, director, or agent shall be liable for monetary damages as provided in s. 617.0834 if such officer, director, or agent breached or failed to perform his or her duties and the breach of, or failure to perform, his or her duties . . . constitutes recklessness or an act or omission that was in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

And Portnoy *has* alleged that the Defendants "*willfully* discriminated and retaliated against" him "because of his disability." Amended Complaint ¶¶ 6, 24 (emphasis added). And he *has* averred that Strickstein-Zandman—as a member of the Board of Directors—was "personally involved in each and every discriminatory act mentioned *infra*[.]" *Id.* ¶ 6; *see also id.* ¶ 59 ("Defendants were personally involved in, authorized and ratified each and every discriminatory act and denial of accommodation for Plaintiff herein."). Portnoy (recall) claims that, "[a]fter [he] requested a reasonable accommodation, he was prohibited from using the gym and recreational facilities *because of* his disability." Complaint ¶ 46 (emphasis added). According to Portnoy, the "Defendants acted to terminate [his] tenancy by refusing to allow [his] landlord to renew [his] lease based on pretextual reasons," while the real reason the Defendants "den[ied] PORTNOY his right to renew the lease" was "*because of* his disability." *Id.* ¶ 66 (emphasis added).

Given these unambiguous allegations, we don't think the Defendant would be immune from liability under FLA. STAT. §§ 617.0834 and 718.111, *even if* those statutes somehow governed the Plaintiff's FHA claims.[7] *See, e.g.*, *Rosado v. Cypress at Woodmont II Condo. Assoc., Inc.*, 2011 WL 13269719, at *3 (S.D. Fla. Jan. 6, 2011) (Jordan, J.) ("Because the plaintiffs have alleged that Ms. Hirshman discriminated against them based on their ethnicity, they have raised allegations of willful and intentional violations of their rights under federal law, specifically, the FHA. These allegations fall within the [ ] exception to immunity, and thus, Ms. Hirshman is not immune from liability under [FLA. STAT. § 617.0834]."); *Hous. Opportunities Project for Excellence*, 510 F. Supp. 2d at 1014 (holding that the "statute's immunity [did] not apply" where the plaintiffs "alleged that the board of directors each personally and intentionally discriminated against families"); *Sabal Palm*, 2014 WL 988767, at *4

---

[7] For similar reasons, we won't dismiss Count IV (Portnoy's state-law claim) because, in that count, Portnoy alleges that the Defendant personally and deliberately discriminated against him. *See* Amended Complaint ¶¶ 66–67.

8

(finding no immunity under § 617.0834 where the plaintiffs "allege[d] (1) that [the individual defendant] 'was personally involved in each and every discriminatory act mentioned in the [counterclaim] during his tenure as President of Sabal Palm's Board of Directors' and (2) that [the defendant] discriminated against the [plaintiffs] 'in total and reckless disregard of [the plaintiffs'] rights' under the FHA" (cleaned up)).

So too here. As we've said, Portnoy alleges (1) that "members of [MEI's] Board of Directors"—including Strickstein-Zandman as "President of the Board of Directors"—"were personally involved in each and every discriminatory act" against him, and (2) that each Defendant acted "with *deliberate* disregard to Plaintiff's rights under federal and state law." Amended Complaint ¶¶ 6, 32 (emphasis added). That's plainly enough to get around Strickstein-Zandman's immunity claims for now.

*Second*, Strickstein-Zandman argues that the "Amended Complaint fails to state a claim for relief" against her because the "Plaintiff failed to include a statement sufficiently explaining why Plaintiff was entitled to any relief against the Defendant Director, individually, and Plaintiff failed to include a demand for any relief sought against Defendant Director, individually." Motion to Dismiss at 3–4 (citing FED. R. CIV. P. 8(a)).[8] We disagree. For one thing, in his prayer for relief, Portnoy clearly "demands judgment against Defendants, MEI Condominium Association, Inc, *and* Anna Strickstein-Zandman[.]" Amended Complaint at 12 (emphasis added). For another, Portnoy alleges that Strickstein-Zandman herself "determined that PORTNOY was not healthy enough to use" MEI's "gym and other amenities." *Id.* ¶ 15; *see also* Response at 7 ("Plaintiff alleged that Strickstein-Zandman was personally involved in denying Plaintiff's access to the gym and other amenities."). He also says

---

[8] To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." FED. R. CIV. P. 8(a)(2)–(3).

that "each and every member of the Defendant members of the Board of Directors" was "personally involved in each and every discriminatory act mentioned *infra* during their tenure as Members of the Board of Directors. As such, each reference to MEI includes each and every member of the Defendant members of the Board of Directors." Amended Complaint ¶ 6.

At this early stage of the case, these allegations are sufficient to state a claim for individual liability under the FHA. *See Hous. Opportunities Project for Excellence*, 510 F. Supp. 2d at 1013–14 (holding that the plaintiffs "stated a sufficient claim against the [individual] board members" where they "specifically allege that '[e]ach and every member of the Board of Directors was personally involved in each and every discriminatory act mentioned *infra* during their tenure as Members of the Board of Directors. As such, each reference to BOTANICA includes each and every member of the [d]efendant members of the Board of Directors'"); *cf. Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2011 WL 5508654, at *3 (S.D. Fla. Nov. 9, 2011) (Cohn, J.) ("Whether an individual agent can be held liable depends upon whether he *personally* committed or contributed to a Fair Housing Act violation." (emphasis added)).[9] Because Portnoy has alleged that Strickstein-Zandman was "personally involved" in "deny[ing him] access to the gym" and in discriminating against him in violation of the FHA and the Florida Fair Housing Act, *see* Amended Complaint ¶¶ 6, 15, we agree that he's "properly pleaded a case against Defendant under [Federal Rule of Civil Procedure] 8," Response at 7.

## CONCLUSION

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Defendant's Motion to Dismiss [ECF No. 31] is **DENIED**.

---

[9] To be clear, while "purely ministerial acts by a property manager may be sufficient to survive a motion to dismiss under the 'plausibility standard' applied at the dismissal stage" of a case under the FHA, these same facts may be "insufficient to establish liability at the summary judgment stage." *Siler v. Abbott House Inc.*, 2017 WL 5494989, at *10 (S.D. Fla. Nov. 16, 2017) (Goodman, Mag. J.) (cleaned up & quoting *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 141 F. Supp. 3d 1321, 1328 (S.D. Fla. 2015) (Rosenberg, J.)).

**DONE AND ORDERED** in the Southern District of Florida on February 28, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:	counsel of record